# STATE OF LOUISIANA
# COURT OF APPEAL, THIRD CIRCUIT

## 18-301

**DONOVAN LUKE FONTENOT**

**VERSUS**

**TOWN OF MAMOU**

\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
THIRTEENTH JUDICIAL DISTRICT COURT
PARISH OF EVANGELINE, NO. 76752-A
HONORABLE GARY J. ORTEGO, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

**CANDYCE G. PERRET**
**JUDGE**

\*\*\*\*\*\*\*\*\*\*

Court composed of Ulysses Gene Thibodeaux, Chief Judge, Shannon J. Gremillion, and Candyce G. Perret, Judges.

**REVERSED AND REMANDED.**

**Patrick Hannon Patrick**
**Patrick, Miller, LLC**
**400 Poydras St., #1680**
**New Orleans, LA 70130**
**(504) 527-5400**
**COUNSEL FOR PLAINTIFF-APPELLANT:**
     **Donovan Luke Fontenot**

**Jonathan Clyde Vidrine**
**West & Vidrine**
**510 West Magnolia**
**Ville Platte, LA 70586**
**(337) 363-2772**
**COUNSEL FOR DEFENDANT-APPELLEE:**
     **Town of Mamou**

**PERRET, Judge.**

This appeal requires this court to review a judgment declaring the Town of Mamou ("the Town") the legal owner of a sewerage lift station as well as the legal owner of the tract of land on which the lift station sits. Plaintiff, Donovan Fontenot ("Mr. Fontenot"), appeals the judgment, asserting that he is the lawful owner of both the disputed land and the lift station. We reverse the judgment finding the Town the lawful landowner and remand the case to the trial court for a hearing to determine what rights the Town has in the lift station.

**Factual and Procedural Background:**

Mr. Fontenot filed a Petition for Declaratory Judgment or to Quiet Title on March 16, 2017. In his petition, Mr. Fontenot alleged he purchased property on December 9, 2015, which included the disputed property. A professional survey was conducted from which Mr. Fontenot learned that the Town's sewerage lift station is partially located on his property. While the lift station access stairs are located on the Town's right of way, not on Mr. Fontenot's property, most of the structure is on Mr. Fontenot's property. Mr. Fontenot alleged that a public records examination showed "no servitudes, right-of-way, grants, easements or any indicia that the lift station structure is or was permitted" to be built. Mr. Fontenot sought a declaratory judgment that he is owner of the lift station. In its Answer, the Town denied Mr. Fontenot's ownership of the lift station and, instead, asserted that it is the owner of not only the lift station, but also the land it sits upon.

At the bench trial on the merits, the evidence, joint stipulations, and testimony established that in 1980 and 1981 the Town was petitioned by the landowners to annex land. In 1981, the Town adopted a resolution and ordinance to incorporate several acres of land, including the area in dispute, within the

corporate limits of the Town. In 1981, the Town adopted a resolution to install the sewerage lift station at issue, at the behest of a sub-division developer who wished to be connected to the Town sewerage system.

The parties stipulated that on December 9, 2015, Mr. Fontenot acquired the property in dispute from Robert Miller. The cash sale, which was also submitted into evidence, included an attached plat of survey by Brandon Breaux. The survey notes that "no attempt has been made . . . to verify title, actual legal ownership, servitudes, easements, rights of way or other burdens on the property[.]" The parties also stipulated that the Town built the lift station on the property at issue in December of 1981 and has continually operated and maintained the station since then. Lastly, the parties stipulated that testimony from Guy Pucheu, the Town's city clerk, would corroborate that of Mayor Fontenot's, which was that the Town has not received any claims, inquiries, notices, lawsuits, or any other disturbances as to the Town's possession of the lift station or any requests or demands that lease or rental payments be made to the landowner.

Mr. Fontenot testified that his request for public records of permits or easements from the Town concerning the lift station produced no documents regarding the allowance of the lift station on the property. Ricky Fontenot, the current mayor of Mamou and a prior city councilman, also testified that, to his knowledge, the Town has always maintained the lift station and mowed the grass. He further stated that he is unaware of any prior owner disputing the Town's ownership of the lift station or denying access to the lift station. However, he also testified that, to his knowledge, there is nothing filed in the conveyance records of the parish regarding the lift station.

The trial court took the matter under advisement and rendered written reasons and a judgment in favor of the Town. In its written reasons, the trial court found that the evidence presented, including the Town's meeting minutes, ordinances, and public business records proved the Town's "acquisition and ownership of said lift station" and that the lift station has been thus possessed and maintained by the Town since 1982. Additionally, the trial court found that Mr. Fontenot's petition judicially admitted the Town's ownership of the lift station.[1] The trial court also concluded that the land beneath the lift station was "formally and properly annexed and incorporated by the Town of Mamou[,]" and ordered that the Town be "declared the legal and lawful owner of that certain tract of land, along with the said public sanitary sewage lift plant[.]" Mr. Fontenot now appeals the judgment, asserting that the trial court (1) incorrectly applied the law of thirty-year acquisitive prescription to conclude the Town owns the land upon which the lift station is built, and (2) erred in determining Mr. Fontenot is not the owner of the lift station.

**Standard of Review:**

An appellate court may not set aside a trial court's findings of fact in absence of manifest error or unless it is clearly wrong. *Stobart v. State, Through DOTD*, 617 So.2d 880 (La.1993), *Rosell v. ESCO*, 549 So.2d 840 (La.1989). Errors of law are reviewed de novo. *Land v. Vidrine*, 10-1342 (La. 3/15/11), 62 So.3d 36."

---

[1] Although Mr. Fontenot's petition names the Town as defendant as the "operator and owner of the public sanitary sewerage system[,]" this statement does not equate to the admission that the Town owns the lift station structure.

3

**Discussion:**

The trial court concluded the Town acquired ownership of immovable property via thirty-year acquisitive prescription. The supreme court has declared that a political subdivision may not acquire full ownership of immovable property for any public purpose through acquisitive prescription, though it may acquire servitudes by prescription. *Parish of Jefferson v. Bonnabel Properties, Inc.*, 93-276 (La. 9/2/93), 620 So.2d 1168. Therefore, we find that the trial court legally erred in its application of the law, which necessitates a de novo review on appeal. *Boudreaux v. Cummings*, 14-1499 (La. 5/5/15), 167 So.3d 559.

Ownership of the Land:

The first assignment of error addresses the ownership of the land beneath the lift station. Mr. Fontenot argues that because all prior landowners permitted both the construction and use of the lift station, the Town did not possess the land under the lift station adversely and is thus a precarious possessor for whom acquisitive prescription cannot run in its favor. The Town argues that it was permitted to annex this property into the city and then permitted to build and operate the lift station without payment, lease, or any signed documents for over thirty-five years. The town further argues that it gave actual notice to the original owner of its intent to use the land as owner, which it asserts is reflected in the Town meeting minutes, letters, and contract for construction in evidence. Therefore, the Town argues that acquisitive prescription commenced in its favor.

The supreme court in *Parish of Jefferson*, 620 So.2d 1168, determined that political subdivisions may not acquire ownership of immovable property for any public purpose by way of acquisitive prescription. In *Parish of Jefferson*, the Parish sued to quiet title to certain alleyways in a subdivision. Although the

subdivision streets were dedicated to public use, the alleyways were instead dedicated to the use of the adjacent lot owners. Despite these dedications, the Parish included the alleys within their fenced-in area used for a sewerage treatment plant and other constructions. The Parish alleged ownership of the alleys by acquisitive prescription under La.Civ.Code arts. 3446 and 3486. The supreme court determined a governmental subdivision did not have authority to acquire full ownership of immovable property through acquisitive prescription and based this conclusion on the determination that La.Const. art. 6, § 23, which permits political subdivisions to acquire property by "purchase, donation, expropriation, exchange, or otherwise," does not include by way of acquisitive prescription. *Id.*

Louisiana Constitution Article 6, section 44, defines "political subdivision," for purposes of article 6, as a "municipality" which is further defined as "an incorporated city, town, or village." Thus, we find that the *Parish of Jefferson* decision is applicable to the case at hand, and that as a political subdivision, the Town may not acquire ownership of the subject property via acquisitive prescription.

Notwithstanding the above decision, we find that the trial court erred in finding the Town was not a precarious possessor, thus preventing acquisitive prescription from commencing. "The exercise of possession over a thing with the permission of or on behalf of the owner or possessor is precarious possession." La.Civ.Code art. 3437. "Acquisitive prescription does not run in favor of a precarious possessor or his universal successor." La.Civ.Code art. 3477. A precarious possessor "commences to possess for himself when he gives actual notice of this intent to the person on whose behalf he is possessing." La.Civ.Code. art. 3439.

5

The record evidences that the Town was asked to connect certain land to the Town's sewerage system, which required the construction of the lift station. The Town held town meetings regarding the construction of the lift station and subsequently built the station. The evidence suggests only that the Town was requested to connect the sewerage system; that the landowners permitted the construction of the lift station; and that the landowners never interfered with the Town's maintenance or operation of the lift station. There is no evidence in the record that indicates the Town gave actual notice of its intent to possess the land as owner to any of the landowners. Consequently, we find the Town never terminated its precarious possession.

Additionally, the trial court seems to imply that the Town's annexation of the land may entitle the Town to its ownership. However, annexation merely extended the corporate limits of the Town to include the land owned by the registered landowner. *See generally* La.R.S. 33:160(A) and La.R.S. 33:179. Therefore, without other documentation or recordings of ownership by the Town, the land under the lift station cannot belong to the Town, but instead belongs to Mr. Fontenot as the recorded landowner.

Accordingly, the trial court's judgment declaring the Town of Mamou to be the lawful owner of the land in dispute is reversed.

Ownership of the Lift Station:

Mr. Fontenot's second assignment of error addresses the ownership of the lift station. The trial court's judgment declared the Town the owner of the lift station. Mr. Fontenot asserts that he is the owner of the lift station because he acquired title in the Cash Sale, which included the tract of land plus all "buildings and improvements thereon." Mr. Fontenot also argues that because he is the owner

of the land upon which the lift station is built, he is also owner of the lift station pursuant to La.Civ.Code art. 491. Louisiana Civil Code Article 491 states:

> Buildings, other constructions permanently attached to the ground . . . may belong to a person other than the owner of the ground. Nevertheless, they are presumed to belong to the owner of the ground, unless separate ownership is evidenced by an instrument filed for registry in the conveyance records of the parish in which the immovable is located.

La.Civ.Code art. 493 states that "[b]uildings, other constructions permanently attached to the ground . . . made on the land of another with his consent belong to him who made them." However, to assert such separate ownership against third persons, the separate ownership must be evidenced "by an instrument filed for registry in the conveyance records of the parish in which the immovable is located." La.Civ.Code art. 493 cmt (b); *see also* La.Civ.Code art. 491 and La.Civ.Code art. 491 cmt (c). In this case, the lift station is partially on Mr. Fontenot's land, and partially on the Town's right of way that runs adjacent to Mr. Fontenot's property. The record contains no evidence of the Town's having recorded such separate ownership of the portion that is on Mr. Fontenot's land. Thus, the Town cannot assert its ownership of that portion against Mr. Fontenot.

Under the particular facts in this case, because we reverse the trial court's judgment regarding the land ownership, we remand this matter to the trial court for a hearing to determine what other rights, if any, the Town may have in its continued operation and maintenance of the lift station (i.e., an implied dedication for public use, a *St. Julien's* servitude under La.R.S. 19:14, or possibly a servitude through acquisitive prescription), noting that the Town has operated the lift station and has paid for the function of the lift station for the benefit of the community since 1982.

7

**Conclusion:**

For the above reasons, the judgment of the trial court declaring the Town of Mamou the owner of the land in dispute is reversed. Furthermore, the case is remanded to the trial court for a hearing to determine the Town's rights in the operation of the lift station. Costs totaling $1,760.52 are assessed equally against the Town of Mamou and Donovan Fontenot.

**REVERSED AND REMANDED.**